1   CURTIS R. TINGLEY (SBN112322)
    ctingley@tingleyllp.com
2   BRUCE C. PIONTKOWSKI (SBN 152202)
    bpiontkowski@tingleyllp.com
3   TINGLEY PIONTKOWSKI LLP
    10 Almaden Boulevard, Suite 430
4   San Jose, California 95113
    Telephone:     (408) 283-7000
5   Facsimile:     (408) 283-7010

6   Attorneys for Defendants
    MASTER MARKETEERS, INC.,
7   and SUSAN PACINI

8

9                   UNITED STATES DISCTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13   CHANEL, INC., a New York corporation,          CASE NO.  CV-07-05946 CRB

14              Plaintiff,                           **MEMORANDUM OF POINTS AND
                                                     AUTHORITIES IN SUPPORT OF
15       v.                                          DEFENDANT PACINI'S MOTION TO
                                                     SET ASIDE DEFAULT [FRCP 55(c)]**
16   SUSAN LYNNE PACINI aka SUSAN L. PACINI dba
     PLANET TAN dba MASTER MARKETEERS, INC.,         **Date:        May 30, 2008**
17   and DOES 1-10, inclusive,                       **Time:        10:00 a.m.
                                                     Courtroom: 8, 19th Floor**
18              Defendants.                          **Honorable Charles R. Breyer**

19

20

21

22

23

24

25

26

27

28

E98C351C.docx

1

# TABLE OF CONTENTS

2

**Page**

3  I.    BACKGROUND ................................................................................................. 1

4  II.   ARGUMENT .................................................................................................... 2

       A.    Federal Courts Disfavor Default ............................................................. 2

5      B.    Test to Set Aside Default ........................................................................ 3

6            1.    Prompt Action to Correct Default ............................................... 4

7            2.    No Culpability As Good Cause Exists for Relief From Default ................. 4

8            3.    In This Case, There Are Meritorious Defenses ........................................ 11

             4.    No Prejudice to Plaintiff ............................................................................ 14

9  III.  CONCLUSION ................................................................................................ 15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TINGLEY
PIONTKOWSKI LLP
ATTORNEYS AT LAW
SAN JOSE

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV-07-05946 CRB

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### **FEDERAL CASES**

4
999 v Cox & Co.
    574 F.Supp. 1026 (ED MO 1983) ...................................................................... 10

5

6
Alan Neumann Prods., Inc. v. Albright
    862 F.2d 1388 (9th Cir. 1989) .................................................................... 4, 5

7
Am. Ass'n of Naturopathic Physicians v. Hayhurst
    227 F.3d 1104 (9th Cir. 2000) ....................................................................... 4

8

9
Bateman v. United States Postal Service
    231 F.3d 1220 (9th Cir. 2000) ..................................................................... 5, 6

10
Bell Tel. Bell Tel. Laboratories, Inc. v Hughes Aircraft Co.
    73 FRD 16(DC Del. 1976) ............................................................................ 9

11

12
Breuer Electric Mfg. Co. v Toronado Systems of America, Inc.
    687 F.2d 182 (CA7 Ill. 1982) ....................................................................... 3

13
Cohen v Murphey
    222 FRD 416 (ND Cal. 2004) ...................................................................... 11

14

15
Dastar Corp v. Twentieth Century Fox
    539 U.S. 23 (2003) .................................................................................... 12

16
Direct Mail Specialists Inc., v. Eclat Computerized Technologies, Inc.
    840 F 2d 685 (9th Cir. 1988) ....................................................................... 10

17

18
Falk v. Allen
    739 F.2d 461 (9th Cir. 1984) ............................................................. 3, 4, 6, 14

19
Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.
    375 F.3d 922 (9th Cir. 2004) ....................................................................... 5, 6

20

21
H.L. Hayden Co. v. Siemens Medical Sys.
    879 F.2d 1005 (2nd Cir. 1989) ...................................................................... 13

22
Halicki v. United Artists Communications, Inc.
    812 F.2d 1213 (9th Cir. 1987) ...................................................................... 11

23

24
Hamilton v Edell
    67 FRD 18 (ED Pa. 1975) ............................................................................ 9

25
Heber v United States
    145 FRD 576 (DC Utah 1992) ...................................................................... 3

26

27
Huntington Cab Co. v American Fidelity & Casualty Co.
    4 FRD 496 (DC W. Va. 1945) ....................................................................... 3

28

TINGLEY
PIONTKOWSKI LLP
ATTORNEYS AT LAW
SAN JOSE

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV-07-05946 CRB

## TABLE OF AUTHORITIES
### (continued)

Page

In re Arthur Treacher's Franchisee Litigation
  92 FRD 398 (ED Pa. 1981) ........................................................................ 2

In re Magouirk
  693 F.2d 948 (CA9 Cal. 1982) .................................................................. 3

In re Stone
  588 F.2d 1316 (10th Cir. 1978) ............................................................... 14

International Jensen v. Metrosound U.S.A.
  4 F.3d 819 (9th Cir. 1993) ....................................................................... 12

Kornblum v Millstone
  38 FR Serv. 2d 174 (9th Cir. 1983) .......................................................... 4

Lamothe v. Atlantic Recording Corp.
  847 F.2d 1403 (9th Cir. 1988) ................................................................. 12

Laurino v. Syringa General Hospital,
  279 F.3d 750, 753 (9th Cir. 2002) ......................................................... 6, 7

Litchfield v. Spielberg
  736 F.2d 1352 (9th Cir. 1984) ................................................................. 12

Lolatchy v Arthur Murray, Inc.
  816 F2d 951 (4th Cir. 1987) ...................................................................... 9

Madsen v. Bumb
  419 F.2d 4 (9th Cir. 1969) ....................................................................... 14

Mathon v Marine Midland Bank, N.A.
  875 F.Supp. 986 (ED NY 1995) .............................................................. 10

Matrix Essentials v. Emporium Drug Mart
  988 F.2d 587 (5th Cir. 1993) ................................................................... 13

Meadows v Dominican Republic
  817 F.2d 517 (9th Cir. 1987) ..................................................................... 4

Medunic v Lederer
  533 F.2d 891 (CA3 Pa. 1976) ................................................................... 3

NEC Electronics v. CAL Circuit Abco
  810 F.2d 1506 (9th Cir. 1987) ................................................................. 13

Newhouse v. Probert
  608 F.Supp. 978 (WD MI 1985) ............................................................. 10

Pena v Seguros La Comercial
  770 F. 2d 811 (9th Cir. 1985) .................................................................... 2

TINGLEY
PIONTKOWSKI LLP
ATTORNEYS AT LAW
SAN JOSE

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV-07-05946 CRB

**TABLE OF AUTHORITIES**
(continued)

**Page**

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,
  507 U.S. 380 (1993) ........................................................................................... 5

Prestonettes, Inc. v. Coty,
  264 U.S. 359 (1924) ......................................................................................... 13

Pullman v. Pullman
  156 US App. DC 25 (App DC 1973) .................................................................. 3

Savin Corp. v C.M.C. Corp.
  98 FRD 509 (ND Ohio 1983) ............................................................................ 7

Schartner v Copeland
  59 FRD 653 (MD Pa. 1973) .............................................................................. 2

Sebastian v. Longs
  53 F.3d 1073 (9th Cir. 1995) ........................................................................... 13

SEC v. Lewis
  2004 U.S. Dist. LEXIS 29597 (2004 CD CAL) ............................................. 6, 7

Shepard Claims Service, Inc. v William Darrah & Associates
  796 F2d 190 (CA6 Mich. 1986) ...................................................................... 10

Smith v City of Chester
  152 FRD 492 (ED Pa. 1994) .............................................................................. 3

Summit Mach. Tool Mfg. v. Victor CNC Systems
  7 F.3d 1434 (9th Cir. 1993) ........................................................................ 11, 12

TCI Group Life Ins. Plan v. Knoebber
  244 F.3d 691 (9th Cir. 2001) ........................................................ 3, 4, 5, 6, 14

Thorpe v Thorpe
  364 F.2d 692 (App DC 1966) ............................................................................ 4

Ticketron v. Greene
  92 FRD 6 (ED PA 1991) ..................................................................................... 8

Tolson v Hodge
  411 F2d 123 (4th Cir. 1969) .............................................................................. 9

Transgo, Inc. v. Ajac Transmission Parts Corp.
  768 F.2d 1001 (9th Cir. 1985) ..................................................................... 11, 12

Two Pesos, Inc. v. Taco Cabana, Inc.
  505 U.S. 763 (1992) .................................................................................... 11, 12

United States Fid. & Guar. Co. v Petroleo Brasileiro S.A.
  220 FRD 404 (SD NY 2004) .............................................................................. 3

- iv -

TINGLEY
PIONTKOWSKI LLP
ATTORNEYS AT LAW
SAN JOSE

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV-07-05946 CRB

## TABLE OF AUTHORITIES
### (continued)

**Page**

United States v Gant
    268 F.Supp.2d 29 (DC Dist. Col. 2003)..................................................................... 2

Williams v. Campbell Chrystler-Dodge Inc.
    96 FRD 547 (ED TN 1982).............................................................................................. 10

## FEDERAL STATUTES

Federal Rule of Civil Procedure 54(b) ............................................................................... 15

Federal Rule of Civil Procedure 55....................................................................................... 9

Federal Rule of Civil Procedure 55(c) .......................................................... 2, 3, 4, 5, 9, 10, 11

Federal Rule of Civil Procedure 60(b) ................................................................... 2, 3, 5, 9

Federal Rule of Civil Procedure 60(b)(1) ............................................................................ 5

15 U.S.C. § 1125(a)
    (Lanham Act) ....................................................................................................... 11, 13

## OTHER AUTHORITIES

3A Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 21.13
    (4th ed. 1994 & Fall Cum. Supp. 1994 ................................................................. 13

Restatement (Third) of Unfair Competition § 24 cmt. B (1995) .................................... 13

TINGLEY
PIONTKOWSKI LLP
ATTORNEYS AT LAW
SAN JOSE

1       The following is the Memorandum of Points and Authorities in Support of Defendant

2   Susan Pacini's Motion to Set Aside the Entry of Default.  Susan Pacini ("PACINI") hereby

3   moves, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, to set aside the Request

4   for Entry of Default that was entered by the clerk on February 28, 2008.

5                       **I. BACKGROUND**

6       During the summer of 2007, a private investigator entered the tanning salon called "Planet

7   Tan" and seized numerous Chanel purses.

8       In response to this action, PACINI retained attorney Randall Knox.  (See Declarations of

9   Knox and Pacini.)  Knox did contact local law enforcement officials and did discover that there

10  was no criminal investigation.  (Decl. Knox.)  Knox is an attorney who specializes in defending

11  criminal matters.  (Decl. Knox.)

12      When Knox received a copy of a "cease and desist" letter from PACINI, Knox followed

13  up by contacting a civil attorney in Florida who purportedly represented Chanel.  (Decl. Knox.)

14      Thereafter, in December 2007, Defendant PACINI was purportedly served by substitute

15  service with the Complaint.  At the same time, Master Marketeers, Inc., was also purportedly

16  served.

17      PACINI forwarded the Complaint to Knox.  He indicated that he would address the

18  matter.  (Decl. Knox.)

19      Thereafter, Knox had telephone conferences with counsel for Chanel, Michael Lisi,

20  regarding resolution.  (Decl. Knox.)

21      Knox became embroiled in several significant criminal matters in early 2008, and did not

22  follow up with the civil case filed by Chanel.  (Decl. Knox.)  Knox was involved in hearings

23  relating to rape, mayhem and murder.  (Decl. Knox.)

24      In February 2008, Knox was contact by Mr. Lisi.  He indicated that Chanel would be

25  seeking entry of a default.  (Decl. Knox.)  Knox did nothing because he thought that PACINI was

26  taking care of the civil matter.  He had indicated to her that he was only a criminal defense

27  attorney.  (Decl. Knox.)  On the other hand, PACINI thought that she had hired an attorney who

28  could handle the entire matter.  (Decl. PACINI.)

E98C351C.docx

1       In early April 2008, Knox called PACINI to indicate that a deadline had been missed.

2  Within days, PACINI had retained Tingley Piontkowski LLP to represent her and her company.

3  (Decl. Knox.)

4       On April 8, 2008, an Answer was filed on behalf of Master Marketeers Inc.  Also on

5  April 8, 2008, counsel with Tingley Piontkowski LLP contacted Chanel's counsel to request that

6  the default be set aside.  A brief conversation took place between Chanel counsel and Defendants'

7  counsel on Thursday, April 10, 2008, regarding the default.  Mr. Lisi indicated that he was

8  pressed for time, but would call on Friday.  He did not call.  (Decl. Piontkowski.)  On April 14,

9  2008, counsel for Defendants spoke with Mr. Lisi.  He stated that his client would not agree to set

10  aside the default.  (Decl. Piontkowski.)

11       On February 21, 2008, Plaintiff filed a Request for Entry of Default.  That Request for

12  Entry of Default was entered by the Clerk on February 28, 2008.

13  ## II. ARGUMENT

14  **A.**     **Federal Courts Disfavor Default**

15       Federal Rule of Civil Procedure 55(c) states:

16          (c) Setting Aside a Default or a Default Judgment. The court may
        set aside an entry of default for good cause, and it may set aside a

17          default judgment under Rule 60(b).

18       Courts look upon default judgments with disfavor.  (Pena v Seguros La Comercial,

19  770 F. 2d 811, 814 (9th Cir. 1985); Schartner v Copeland, 59 FRD 653 (MD Pa. 1973); In re

20  Arthur Treacher's Franchisee Litigation,  92 FRD 398 (ED Pa. 1981) .)

21       Because courts strongly favor resolution of disputes on their merits, and because it seems

22  inherently unfair to use court's power to enter judgment as penalty for filing delays, default

23  judgments are not favored by modern courts; accordingly, default judgment usually is available

24  only when adversary process has been halted because of essentially unresponsive party, as

25  diligent party must be protected lest he be faced with interminable delay and continued

26  uncertainty as to his rights.  (See United States v Gant, 268 F.Supp.2d 29 (DC Dist. Col. 2003).)

27       Determination of whether to grant motion for default judgment is within sound discretion

28  of district court, however, it is well established that default judgments are disfavored, and clear

1  preference exists for cases to be adjudicated on merits; default judgments are, thus, reserved for

2  rare occasions and any doubts should be resolved in favor of defaulting party.  (United States Fid.

3  & Guar. Co. v Petroleo Brasileiro S.A., 220 FRD 404 (SD NY 2004).)

4      Motion to set aside default under Rule 55(c) does not involve challenge to correctness of

5  decision on merits but concerns failure to file initial complaint that would initiate decision on

6  merits.  (In re Magouirk, 693 F.2d 948 (CA9 Cal. 1982).)

7      A standard of liberality, rather than strictness, should be applied in acting on motion to set

8  aside default judgment, and any doubt should be resolved in favor of petition to set aside

9  judgment so that cases may be decided on their merits.  (Medunic v Lederer, 533 F.2d 891, 21 FR

10  Serv 2d 1014 (CA3 Pa. 1976).)  Resolution on merits is preferable to judgment by default, so that

11  court should liberally allow relief under Rule 55(c).  (Pulliam v Pulliam, 156 US App. DC 25,

12  478 F2d 935 (App DC 1973).)

13      Courts have given Rule 55 liberal construction, always trying where possible to see that

14  cases are decided on their merits; any doubt should be resolved in favor of application to set aside

15  judgment to end of securing trial upon merits.  (Huntington Cab Co. v American Fidelity &

16  Casualty Co., 4 FRD 496 (DC W. Va. 1945); Heber v United States, 145 FRD 576 (DC Utah

17  1992) ; Smith v City of Chester, 152 FRD 492 (ED Pa. 1994) .)

18  **B.    Test to Set Aside Default**

19      To prevail on motion to set aside default, a defendant must show (1) good cause for relief

20  from the default, (2) quick action to correct it, and (3) meritorious defense to plaintiff's complaint.

21  (See e.g. Breuer Electric Mfg. Co. v Toronado Systems of America, Inc., 687 F.2d 182 (CA7 Ill.

22  1982) .)

23      The "good cause"  standard that governs the vacating of a default judgment under Federal

24  Rule of Civil Procedure 55(c) also governs the vacating of a default judgment under Rule 60(b).

25  (TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).)  The relevant factors

26  are (1) whether the defendant's culpable conduct led to the default, (2) whether the defendant has

27  a meritorious defense, and (3) whether reopening the default judgment would prejudice the

28  plaintiff.   (Id.) (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984).)

1    The party in default bears the burden of establishing that these factors militate in favor of

2    vacating the default judgment. (Id.)

3        1.    Prompt Action to Correct Default

4        In the current case, the Request for Entry of Default was entered within the past 45 days.

5    New counsel was retained the week this motion was filed.  (See Decl. PACINI and Piontkowski.)

6        Trial court's order setting aside entry of default is not abuse of discretion, where there is

7    no evidence that default was willful, application for relief was brought on timely basis, and

8    plaintiff was in no way prejudiced by entry of default.  (Kornblum v Millstone, 38 FR Serv. 2d

9    174 (9th Cir. 1983) .)  Default judgments should generally be set aside where moving party acts

10   with reasonable promptness and alleges defense on merits and default was not willful.  (Thorpe v.

11   Thorpe, 364 F.2d 692 (App DC 1966) .)

12       In the current case, there can be little doubt that the Defendants acted with "reasonable

13   promptness".  (Meadows v Dominican Republic, 817 F.2d 517, 520-521 (9th Cir. 1987).)  Within

14   days of discovering the default, Defendant PACINI retained Tingley Piontkowski LLP.  (See

15   Decl. PACINI.)

16       2.    No Culpability As Good Cause Exists for Relief From Default

17       Rule 55(c) of the Federal Rules of Civil Procedure states, in relevant part, "[f]or good

18   cause shown the court may set aside an entry of default."  Under Ninth Circuit precedent, the

19   Court applies a three-factor test to determine if "good cause" exists: (1) whether defendant's

20   culpable conduct caused the default; (2) whether defendant appears not to have a meritorious

21   defense; and (3) whether plaintiff would be prejudiced by setting the default aside.  (TCI Group

22   Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001)  (citing Falk v. Allen, 739 F.3d 461

23   (9th Cir. 1984) , 463 for the three-factor test and holding that "good cause" showing to set aside

24   default and "excusable neglect" standard to set aside a default judgment are the same.))  The Falk

25   test is disjunctive; thus the court may refuse to set aside default based upon any of the factors.

26   (Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108-09 (9th Cir. 2000).)  A

27   party's conduct may be culpable if he or she has received actual or constructive notice of the

28   filing of the action and intentionally fails to answer the complaint.  (Alan Newman Prods., Inc. v.

1    Albright, 862 F.2d 1388, 1392 (9th Cir., 1988).)  If, however, the defendant can offer a "credible,

2    good faith explanation negating any intention to take advantage of the opposing party, interfere

3    with judicial decisionmaking, or otherwise manipulate the legal process," the failure to answer is

4    "not necessarily . . . culpable or inexcusable."  (TCI Group Life, 244 F.3d at 697-98.)  Defendant

5    has moved for relief from the Court's order entering default and default judgment under Federal

6    Rules of Civil Procedure 55(c) and 60(b)(1). Rule 55(c) provides that a court may set aside a

7    default for "good cause shown".  (Fed. R. Civ. Pro. 55(c).)  Similarly, Rule 60(b)(1) permits a

8    court to "relieve a party . . . from a final judgment . . . for the following reasons: [] mistake,

9    inadvertence, surprise, or excusable neglect[.]"  (Fed. R. Civ. Pro. 60(b)(1).)  A district court has

10   discretion to determine whether to set aside defaults pursuant to Rule 55(c) and default judgments

11   pursuant to Rule 60(b)(1).  (TCI Group Life Insurance Plan v. Knoebber, 244 F.3d 691, 695

12   (9th Cir. 2001);  Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922,

13   927 n.4 (9th Cir. 2004)) ("As with the district court's denial of HRG's motion to set aside a default,

14   we review the district court's denial of HRG's motion to set aside a default judgment for an abuse

15   of discretion.") (citing Alan Neumann Prods., Inc. v. Albright (9th Cir. 1989) 862 F.2d 1388,

16   1391.)  But in exercising that discretion, courts must be mindful that default judgments "are

17   appropriate only in extreme circumstances" and, whenever possible, courts should resolve cases

18   on the merits.  (TCI Group Life Insurance Plan, 224 F.3d at 696 (9th Cir. 2001).)  "Put another

19   way, where there has been no merits decision, appropriate exercise of district court discretion

20   under Rule 60(b) requires that the finality interest should give way fairly readily, to further the

21   competing interest in reaching the merits of a dispute."  (Id.) (emphasis in original.)

22       "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is

23   the same standard that governs vacating a default judgment under Rule 60(b)."  (Franchise

24   Holding II, LLC, 375 F.3d at 925 (citing TCI Group Life Insurance Plan, 244 F.3d at 696).)  Both

25   require courts to apply an equitable analysis to determine whether neglect is excusable or whether

26   good cause has been shown.  (Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S.

27   380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993); Bateman v. United States Postal Service (9th

28   Cir. 2000) 231 F.3d 1220, 1222 (9th Cir. 2000) (applying Supreme Court's standard from Pioneer

1  to Rule 60(b)(1) motion where judgment was entered after moving party missed deadline for

2  filing opposition to summary judgment motion); TCI Group Life Insurance Plan v. Knoebber, 244

3  F.3d 691, 696 (9th Cir. 2001) (observing that analysis of "good cause" for Rule 55(c) motion

4  necessarily encompasses Pioneer's equitable analysis).) The "good cause" analysis requires the

5  Court to consider three factors: (1) whether the moving party's culpable conduct led to the

6  default; (2) whether the moving party has a meritorious defense; or (3) whether reopening the

7  default judgment would prejudice the non-moving party. (Franchise Holding II, LLC, 375 F.3d at

8  926.) The Ninth Circuit has noted that these factors are disjunctive and, as such, a district court

9  may deny a motion to set aside a default judgment "'if any of the three factors [are] true'." (Id.)

10  (citations omitted.)

11          In SEC v. Lewis, 2004 U.S. Dist. LEXIS 29597 (2004 CD CAL), September 27, 2004, the

12  Court explained:

13          In evaluating a defendant's alleged culpability, courts must accept
           the defendant's uncontested factual allegations accompanying his
14          motion to set aside default as true. Falk, 739 F.2d at 464 ("On a
           Rule 60(b) motion, this court will accept the allegations of the
15          movant's factual statements."); see Laurino v. Syringa General
           Hospital, 279 F.3d 750, 753 (9th Cir. 2002) (finding that district
16          court erred in denying Rule 60(b) motion, in part, because court
           failed to credit moving party's "non-frivolous explanation" for
17          failing to prosecute case) (citing Falk, 739 F.2d at 464)).

18  The SEC v. Lewis Court further stated:

19          Here, Defendant's conduct, while careless and neglectful, was not
           culpable. First, Defendant has offered good faith explanations for
20          his failure to respond to the Complaint. Specifically, he explained
           that, despite his efforts to do so, he was unable to obtain counsel to
21          represent him in this matter. Although he concedes that Mr.
           Pettibone was representing him when the Complaint was filed and
22          served, Defendant notes that Mr. Pettibone declared himself
           unqualified to represent Defendant in this matter. Additionally,
23          Mr. Pettibone obtained an order granting his motion to withdraw
           from further representing Defendant. While Mr. Pettibone's
24          decision to withdraw as counsel stemmed, in part, from his inability
           to contact Defendant, Defendant's response to the Complaint was
25          not yet due when Mr. Pettibone withdrew as counsel.

26  The SEC v. Lewis Court concluded that:

27          The fact that Defendant's proffered explanations are weak by any
           measure does necessarily mean that his actions, or inaction, were
28          culpable. See Bateman, 231 F.3d at 1225 (conceding that attorney's

proffered explanations for failing to timely respond to summary judgment motion were "admittedly weak," but nevertheless noting that they evidenced only carelessness and negligence, not deviousness or willfulness); *see also* Laurino, 279 F.3d at 753 (finding that plaintiff's affidavit stating he was unable to obtain new attorney weighed in favor of granting plaintiff's Rule 60(b) motion). Defendant probably could have timely obtained replacement counsel if he had put forth sufficient effort. Indeed, his failure to allege any facts showing the extent to which he tried to obtain replacement counsel likely indicates that he exerted little effort in this endeavor. *See* Laurino, 279 F.3d at 756 (in dissent) (criticizing plaintiff's counsel's affidavit for alleging conclusory facts about inability to find replacement counsel and opining that "had plaintiff been able to say anything more helpful to his cause, the lawyer would have put it in the affidavit"). Nevertheless, his failure to do so, while careless, does not establish his culpability.

Second, Defendant's actions since the Court first entered default do not suggest bad faith. . . .

Third, no evidence suggests that Defendant refused to respond to the Complaint in order to either obtain an advantage over Plaintiff, interfere with judicial decisionmaking, or otherwise manipulate the legal process. . . . (See Id. at 2004 U.S. Dist. LEXIS 29597.)

In the current case, Defendants' counsel, Randall Knox, was retained to respond to the issues raised by the seizure of the purses by the Chanel investigator and continued to represent Defendants even after the Complaint was filed. (Decl. Knox.) However, Mr. Knox was involved in a criminal murder trial in February and March 2008, and only apprised the Defendants that the deadline for filing a responsive pleading had passed within the past ten days. (Decl. PACINI.) There was a mistake of fact in that Knox believed that Defendants were hiring civil counsel and PACINI believed that Knox would be representing the Defendants in all matters related to this dispute. (See Decl. PACINI and Knox.)

Relief has frequently been granted under Rule 55(c) in cases involving defaults attributable to action on part of attorney representing defaulting party. (*See e.g.* Savin Corp. v C.M.C. Corp., 98 FRD 509, 36 FR Serv 2d 1308 (ND Ohio 1983).) The Savin Court found that Defendant failed to timely respond to plaintiff's complaint, and a default was entered against defendant by the clerk of court. Defendant's attorney asserted that he failed to file a timely answer to plaintiff's complaint because he did not believe that service of process was complete until a return of service was filed with the clerk's office pursuant to a local service of process rule.

1    He also contended that as soon as he became aware of the default, he took immediate steps to

2    cure it.  The Court granted defendant's motion for relief from default because defendant did not

3    act willfully or in bad faith to delay litigation, plaintiff would not be substantially prejudiced if

4    the case were reopened, and defendant had asserted a meritorious defense to plaintiff's claims.  In

5    addition, the court ruled that defendant's attorney mistakenly relied upon a local rule for service

6    of process, and such a mistake did not warrant action depriving litigants their right to be heard.

7    The court noted that there was an overriding policy disfavoring defaults.

8         The current case is also much like Ticketron v. Greene, 92 FRD 6 (ED PA 1991) .  In that

9    case, the Court set aside the default and explained:

> First, defendant Greene's failure to plead is excusable.  The complaint was served on November 6, 1980, to defendant at his home. Greene turned the complaint over to counsel representing defendant company, Record Museum, assuming that corporate counsel would represent him.  **At all times, defendant was under the impression that the matter was being handled by counsel.** Defendant was unaware that counsel had not filed an answer, and was advised by counsel on or about December 10, 1980, that defendant should see to it himself that an answer was filed. Immediately, defendant secured the services of another attorney who filed an answer with the court on December 12, 1980.  Under the circumstances of this case, defendant was reasonable in relying on the corporate attorney to take the appropriate action, and did not evidence a disregard for the judicial process.  (Emphasis added.) (92 FRD at p. 6.)

18        In the current case, PACINI hired KNOX to represent her and her company.  (Decl.

19   PACINI.)  KNOX had taken steps over the latter part of 2007 to address the controversy.  He had

20   communicated with law enforcement, the Chanel counsel in Florida and the Chanel counsel in

21   San Francisco.  (See Decl. of Knox.)  He had not clearly indicated that his representation of

22   Defendants would be limited to criminal matters.  In fact, by communicating with civil counsel,

23   he gave PACINI the impression that he would be handling the entire matter.  (Decl. PACINI.)

24        PACINI was unaware of the conversation KNOX had with Plaintiff's counsel in February

25   2008 about a default.  (Decl. PACINI.)  PACINI first became aware that there was a problem

26   with the case when she was called by KNOX in early April 2008.  (Decl. PACINI.)  Until then,

27   she had relied upon KNOX to fully represent her including filing an Answer.  (Decl. PACINI.)

28        In addition to other criteria applicable in ruling on motion to set aside default, court may

1  consider whether failure to set aside would result in extreme inequity to defendant. (Hamilton v

2  Edell, 67 FRD 18, 20 FR Serv 2d 1119 (ED Pa. 1975).)

3       In the current case, the default would have the inequitable effect of potentially causing the

4  entry of a default judgment against PACINI as an individual but not against the corporate

5  Defendant that actually sold the goods in question.

6       In exercising its discretion to set aside a default under Rules 55(c) and 60(b), the trial

7  court must balance need for prompt and efficient handling of litigation against attainment of just

8  resolution of particular dispute before court. The court must consider whether moving party's

9  failure to present all evidence before close of case is excusable, and whether moving party has

10 meritorious claim or defense based on that evidence, whether other party will be substantially

11 prejudiced by reopening, and, if so, whether prejudice can be mitigated by award of cost or other

12 shaping of relief. (Bell Tel. Bell Tel. Laboratories, Inc. v Hughes Aircraft Co. 73 FRD 16, 24 FR

13 Serv 2d 959 (DC Del. 1976).)

14      There are numerous cases where a defendant relies upon an attorney or others to act, and

15 that third party fails to act, and the default is thereby set aside.

16      For instance, a Court of Appeal found that the trial court abused its discretion in not

17 relieving plaintiff of default judgment and in not permitting response to counterclaim out of time

18 where plaintiff's failure to reply to counterclaim within proper time was due to neglect by

19 plaintiff's attorney or plaintiff's insurance company or due to necessity of advising insurance

20 company of filing of claim, coupled with fact that plaintiff, insurance company, and his counsel

21 did not all reside in same city, delay was short, there was no gross neglect by plaintiff and no lack

22 of prejudice to defendant, and there was meritorious defense. (Tolson v Hodge, 411 F2d 123 (4th

23 Cir. 1969) .)

24      Similarly, an appellate court found that a District Court abused its discretion in denying

25 motion to set aside default under Rule 55(c), where defendants were blameless, there had been no

26 prejudice to plaintiff, any dilatory action was on part of defendants' attorney, not defendants, and

27 continued for at most only a few months, and no sanctions short of default were attempted by

28 District Court. (Lolatchy v Arthur Murray, Inc., 816 F2d 951, 7 FR Serv 3d 368 (4th Cir. 1987).)

1    On motion to set aside entry of default, "good cause" standard of Rule 55 is applicable

2    and it is not absolutely necessary that neglect or oversight offered as reason for delay in filing

3    responsive pleading be excusable; thus, where delay resulted from dispute over date from which

4    agreed upon extension was to run, the District Court finding of culpable conduct based on

5    negligence of defendant's lawyer in not reviewing work of his secretary was erroneous since

6    delay was not lengthy, there was no pattern of disregard for court orders or rules, plaintiff

7    suffered no prejudice by reason of tardy pleadings, and defendant presented meritorious defense

8    in its answer.  (Shepard Claims Service, Inc. v William Darrah & Associates, 796 F2d 190, 5 FR

9    Serv 3d 393 (CA6 Mich. 1986).)

10    In one case, it was found that a default judgment will be set aside under FRCP 55(c)

11    where counsel misunderstood federal motion practice and delay only involved several weeks,

12    because good cause is established and meritorious defense presented.  (Mathon v Marine Midland

13    Bank, N.A., 875 F.Supp. 986 (ED NY 1995), RICO Bus Disp Guide (CCH) P 8768.)

14    In the current case, the Defendants failed to timely file an Answer due to the fact that

15    PACINI believed KNOX was taking care of it, and KNOX believed that PACINI was hiring

16    another lawyer.  (Decl. PACINI.)

17    A mistake of fact is grounds to set aside a default.  (See e.g. 999 v Cox & Co., 574

18    F.Supp. 1026, 1029 (ED MO 1983).)  Like the cases Williams v. Campbell Chrystler-Dodge Inc.,

19    96 FRD 547 (ED TN 1982) and Newhouse v. Probert, 608 F.Supp. 978, 985 (WD MI 1985),

20    where a defendant believes in good faith that their attorney is taking care of filing the Answer, but

21    there is a good faith mistake of fact as to whom was to file the Answer, the default should be set

22    aside.

23    This is not a case where the defendant had a desire to ignore the lawsuit.  (See Direct Mail

24    Specialists Inc., v. Eclat Computerized Technologies, Inc., 840 F 2d 685, 690 (9th Cir. 1988).)  In

25    fact, PACINI faxed a copy of the Complaint to KNOX as soon as it was received.

26    Rather, in summation, this is a case where there is "good cause" to set aside the default

27    because PACINI took all reasonable steps to ensure that she and her company were represented

28    by counsel and actively responded to the matters raised by Chanel.  She was not neglectful nor

1    was she evasive.  As a result, since there exists good cause, the Court should set aside the entry of

2    default.

3          3.      In This Case, There Are Meritorious Defenses

4          In the current case there are numerous meritorious defenses.  As a result, the default

5    should be set aside so that this matter may be resolved on its merits.

6          The "meritorious defense" component of test for setting aside a default pursuant to

7    Rule 55(c) does not go so far as to require that movant demonstrate likelihood of success on

8    merits.  Rather, the defendant must only show the plausibly suggest existence of facts which, if

9    proven at trial, would constitute cognizable defense.  (Cohen v Murphey, 222 FRD 416 (ND Cal.

10   2004) .)

11         In the current case, the purported violation of law pertains to the Lanham Act.  Section

12   43(a) of the Lanham Act (15 U.S.C. § 1125(a)) provides, in part, that any person who uses in

13   commerce any word, term, name, symbol, or device, or any combination thereof, or any false

14   designation of origin, false or misleading description of fact, or false or misleading representation

15   of fact on or in connection with any goods, services, or container for goods is liable in a civil

16   action if the use is likely to cause confusion or mistake, or to deceive as to the affiliation,

17   connection, or association of the user with another person, or as to the origin, sponsorship, or

18   approval of his or her goods, services, or commercial activities by another person.

19         The Lanham Act encompasses common-law unfair competition actions for "passing off"

20   and "reverse passing off".  (See Summit Mach. Tool Mfg. v. Victor CNC Systems, 7 F.3d 1434,

21   1437 (9th Cir. 1993),) as well as actions for infringement of unregistered trademarks and "trade

22   dress"; (see Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d

23   615, 623, 625 (1992).)  Thus, the cause of action for false designation of origin under Lanham

24   Act Section 43(a) encompasses the common law action for passing off.  (Transgo, Inc. v. Ajac

25   Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985), cert. denied, 474 U.S. 1059

26   (1986)].  Regardless of the type of activity sought to be remedied.  (See Halicki v. United Artists

27   Communications, Inc., 812 F.2d 1213, 1214 (9th Cir. 1987).)

28         The most natural understanding of the phrase "origin of goods" as used in Section 43(a) is

1  that it connotes the source of wares; therefore, the phrase refers to the person who is the producer

2  of some tangible product sold in the marketplace.  Moreover, the phrase is incapable of connoting

3  a person or entity that originated whatever ideas or communications the goods may embody or

4  contain.  (Dastar Corp v. Twentieth Century Fox, 539 U.S. 23; 123 S.Ct. 2041 (2003); 156 L. Ed.

5  2d 18 ("such an extension [to an originator of embodied ideas] would not only stretch the text, but

6  it would be out of accord with the history and purpose of the Lanham Act and inconsistent with

7  precedent.").)

8        Passing off may be either express or implied.  (Lamothe v. Atlantic Recording Corp., 847

9  F.2d 1403, 1406 (9th Cir. 1988).)  Express passing off occurs when a person or enterprise labels

10  goods with a mark identical to that of another person or enterprise, or otherwise expressly

11  misrepresents that the goods originated with another person or enterprise.  (Transgo, Inc. v. Ajac

12  Transmission Parts Corp., 768 F.2d 1001, 1020 (9th Cir. 1985), cert. denied, 474 U.S. 1059

13  (1986).)  Implied passing off occurs when a person or enterprise uses a competitor's advertising

14  material, or a sample or photograph of the competitor's product, to impliedly represent that the

15  product being sold is made by the competitor.  (Lamothe v. Atlantic Recording Corp., 847 F.2d

16  1403, 1406 (9th Cir. 1988).)

17        A person may incur liability under Section 43(a) for express or implied reverse passing

18  off.  Express reverse passing off occurs when one person removes the name or mark on another

19  party's product and sells that product under a name chosen by that person.  (See Summit Mach.

20  Tool Mfg. v. Victor CNC Systems, 7 F.3d 1434, 1437 (9th Cir. 1993); Litchfield v. Spielberg,

21  736 F.2d 1352, 1357-1358 (9th Cir. 1984).)

22        As a related matter, "trade dress" refers to the total image of a product or service and may

23  include such features as size, shape, color, color combinations, texture, or graphics.  (International

24  Jensen v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir. 1993); see Two Pesos, Inc. v. Taco

25  Cabana, Inc., 505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615, 621 n.1 (1992).)  Federal courts

26  have held that a seller's adoption of a trade dress that is confusingly similar to a competitor's

27  constitutes a form of unfair competition that is actionable under Lanham Act Section 43(a).

28  (International Jensen v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir. 1993); see Two Pesos, Inc.

1    v. Taco Cabana, Inc., 505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615, 623-628 (1992).)

2        Clearly in this case, where there is a claim of "palming off" and "counterfeiting" there is

3    an issue regarding the application of the defense of the "first sale" doctrine.

4        The courts have long recognized a basic limitation on the right of a trademark owner

5    under the Lanham Act to control the distribution of its own products.  Beginning with

6    Prestonettes, Inc. v. Coty, 264 U.S. 359, 68 L.Ed. 731, 44 S.Ct. 350 (1924), courts have

7    consistently held that, with certain well-defined exceptions, the right of a producer to control

8    distribution of its trademarked product does not extend beyond the first sale of the product.

9    Resale by the first purchaser of the original article under the producer's trademark is neither

10    trademark infringement nor unfair competition.  (See e.g., NEC Electronics v. CAL Circuit Abco,

11    810 F.2d 1506, 1509 (9th Cir. 1987) (sale of genuine trademarked product by seller unauthorized

12    to sell not a violation of Lanham Act); see also Matrix Essentials v. Emporium Drug Mart,

13    988 F.2d 587, 593 (5th Cir. 1993) (same); H.L. Hayden Co. v. Siemens Medical Sys., 879 F.2d

14    1005, 1023 (2nd Cir. 1989) ("The unauthorized sale of a trademarked articles does not, without

15    more, constitute a Lanham Act violation."); Restatement (Third) of Unfair Competition § 24

16    cmt. B (1995) ("Trademark owner cannot ordinarily prevent or control the sale of goods bearing

17    the mark once the owner has permitted those goods to enter commerce."); 3A Rudolf Callmann,

18    The Law of Unfair Competition, Trademarks and Monopolies § 21.13 (4th ed. 1994 & Fall Cum.

19    Supp. 1994) (under the "first sale" doctrine, mere resale of "the genuine plaintiff's article in its

20    original form" is not trademark infringement).)

21        According to the court in Sebastian v. Longs, 53 F.3d 1073, 1075 (9th Cir. 1995), the "first

22    sale" rule provides a sensible and stable accommodation between strong and potentially

23    conflicting forces.  The court remarked that by guaranteeing that a product will be identified with

24    its producer, it serves the legitimate purposes of trademark law - the producer gains the good will

25    associated with the quality of its product, and the consumer gets exactly what the consumer

26    bargains for, the genuine product of the particular producer. On the other hand, the "first sale"

27    rule preserves an area for competition by limiting the producer's power to control the resale of its

28    product.

1    In the current case, Defendants believed that the Chanel purses were "original" "last

2    season's " products that were authentic. (See Decl. PACINI.) If the purses were "authentic"

3    then, arguably, the "first sale" doctrine would apply. A retailer may resell an authentic item that

4    is purchased in the channels of commerce. The core issue here is whether the purchases were in

5    fact authentic.

6    As a result, since there is a dispute of fact regarding whether the "first sale" doctrine

7    applies, there is a sufficient dispute that is meritorious to justify the setting aside of the default.

8    A defendant seeking to vacate a default judgment must present specific facts that would

9    constitute a defense. (See Madsen v. Bumb, 419 F.2d 4, 7 (9th Cir. 1969) (holding that district

10   court had not erred in declining to vacate default judgment when defendant offered "mere general

11   denial without facts to support it").) But the burden on a party seeking to vacate a default

12   judgment is **not extraordinarily heavy**. (See, e.g., In re Stone, 588 F.2d 1316, 1319 n.2

13   (10th Cir. 1978) (explaining that the movant need only demonstrate facts or law showing the trial

14   court that "a sufficient defense is assertible").) That is why, for example, the court held in Falk v.

15   Allen that the defendant had a meritorious defense to an unlawful detainer action when she

16   alleged that her landlord repeatedly accepted her late rental payments. Under Guam law, this

17   allegation was sufficient to raise the defense of waiver, and the question whether the factual

18   allegation was true would be the subject of the later litigation. (See Falk v. Allen, 739 F.2d 461,

19   463 (9th Cir. 1984).)

20   There are many other defenses that apply. But the "first sale" defense is the most apparent

21   defense in this case without proceeding with discovery.

22       4.    No Prejudice to Plaintiff

23   To be prejudicial, the setting aside of a judgment must result in greater harm than simply

24   delaying resolution of the case. Rather, the standard is whether [plaintiff's] ability to pursue the

25   claim will be hindered." (TCI Life Group, 244 F.2d at 701.)

26   To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying

27   resolution of the case. Rather, the standard is whether [plaintiff's] ability to pursue the claim will

28   be hindered." (TCI Life Group, 244 F.2d at 701.)

No such prejudice exists here.  The Request for Entry of Default was entered by the clerk on February 28, 2008.  An Answer was filed on behalf of corporate Defendant Master Marketeers Inc., on April 8, 2008.  As a result, it is possible that a default judgment may not be able to be entered against Defendant PACINI because an Answer was filed on behalf of Defendant Master Marketeers, Inc.  (See e.g., FRCP 54(b).)

Thus, the matter will proceed in a more orderly fashion if this default is set aside.

### III.  CONCLUSION

Defendant PACINI respectfully requests that the default is set aside and that she is allowed the opportunity to defend this case.

Dated:     April 18, 2008                    TINGLEY PIONTKOWSKI LLP


                                             By:  /s/ Bruce C. Piontkowski
                                                  BRUCE C. PIONTKOWSKI
                                                  Attorneys for Defendant