# EXHIBIT A

SHEPARD'S®

*2004 U.S. Dist. LEXIS 29597, **

SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. JAMES P. LEWIS, JR., individually and doing business as FINANCIAL ADVISORY CONSULTANTS, INCOME FUND, LTD., AND GROWTH FUND LTD., Defendant.

CASE NO.: CV 03-9354 ABC (VBKx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2004 U.S. Dist. LEXIS 29597

September 27, 2004, Decided
September 27, 2004, Filed

**SUBSEQUENT HISTORY:** Later proceeding at SEC v. Lewis, 2005 U.S. Dist. LEXIS 41872 (C.D. Cal., Apr. 25, 2005)
Related proceeding at SEC v. Lewis (In re Motion issued to Stein Law Firm), 2006 U.S. Dist. LEXIS 27812 (D.N.M., Jan. 24, 2006)

Judge Profile ($)
View a summary by nature of suit of the civil cases heard by this judge, excerpted from the CourtLink Judicial Strategic Profile.

**CORE TERMS:**
default judgment, notice, default, withdraw, non-moving, culpable, good cause', moving party, culpability, deposition, failure to respond, order setting, replacement, neglectful, good faith, meritorious defense, failure to answer, opposing party, bad faith, deadline, inmate, missed, arrested, investor, factual allegations, entry of default, excusable neglect, summary judgment, citations omitted, constructive notice

**COUNSEL:** [*1] For Securities and Exchange Commission, Plaintiff: Gregory C Glynn, Kelly Curtis Bowers, Martin J Murphy, Peter F Del Greco, SEC -- Securities & Exchange Commission, Los Angeles, CA.

For Janet Goldblatt, Movant: Aurelio Torre, Greenberg Glusker Fields Claman Machtinger & Kinsella, Los Angeles, CA; Frank Hilton Tomlinson, Pritchard McCall & Jones, Birmingham, AL.

For John Kovak, Movant: Kenneth I Gross, Perliss & Gross, Los Angeles, CA.

For United States Of America, Intervenor Plaintiff: Gregory W Staples, AUSA -- Office of US Attorney Criminal Division, Santa Ana, CA.

For James P Lewis, Jr, individually doing business as, Financial Advisory Consultants, Defendant: Douglas J Pettibone, Douglas J Pettibone Law Offices, Santa Ana, CA; James S Brasher, James J Warner, James J Warner Law Offices, San Diego, CA.

For Blakney Boggs, Claimant: Joseph G Dicks, Joseph G Dicks Law Offices, San Diego, CA.

For 0 Robb Evans, Receiver: Gary O Caris, McKenna Long and Aldridge, Los Angeles, CA; Lesley A Hawes, McKenna Long and Aldridge, Los Angeles, CA.

JUDGES: AUDREY B. COLLINS, UNITED STATES DISTRICT JUDGE.

OPINION BY: AUDREY B. COLLINS

**OPINION**

**ORDER RE: DEFENDANT'S MOTION TO SET [*2] ASIDE DEFAULT JUDGMENT**

On May 13, 2004, the Court entered default judgment against Defendant. Pending before the Court is Defendant's Motion to Set Aside Default Judgment. The Motion came on regularly for hearing before the Court on September 27, 2004. Upon consideration of the parties' submissions, the case file, and the arguments of counsel, the Court hereby GRANTS Defendant's Motion to Set Aside Default Judgment.

**I. FACTUAL BACKGROUND**

Plaintiff filed the instant action against Defendant on December 22, 2003. (Defendant's Notice of Lodgment, Exh. A). Six days later, on December 28, 2004, Plaintiff served a Summons and Complaint on Defendant's attorney, Douglass J. Pettibone. (Defendant's Notice of Lodgment, Exh. C). At the time, Mr. Pettibone was authorized to accept service on Defendant's behalf. (Defendant's Notice of Lodgment, Exh. G). Later, on January 8, 2004, Mr. Pettibone acknowledged in writing that he been served with the Summons and Complaint on December 28, 2004. (Id.). Defendant, however, failed to file any response to Plaintiff's Complaint within the allotted twenty day time period,[1] or at any time thereafter.

--------------- Footnotes ---------------

1 Defendant's response to Plaintiff's Complaint was due on or before January 19, 2004.

------------ End Footnotes---------------

[*3] Before Defendant's response to the Complaint became due, Plaintiff served Mr. Pettibone both by mail and by facsimile with a written notice to depose Defendant. (Decl. of Peter F. Del Greco, Exh. 1). The deposition was scheduled to occur on December 31, 2003. (Id.). Although Mr. Pettibone sent the deposition notice to Defendant's last known address, Mr. Pettibone could not say whether, in fact, Defendant received the notice. (Id., Exh. 2 at 19). Ultimately, Defendant failed to attend his scheduled deposition. (Id. at 18).

Shortly thereafter, on January 5, 2004, Mr. Pettibone sought the Court's permission to withdraw as Defendant's counsel. (Docket Entry No. 11). The Court initially denied Mr. Pettibone's request because he had neglected to serve Defendant with the notice of withdrawal. (Id.). Later, however, Mr. Pettibone renewed his request to withdraw as Defendant's counsel and served Defendant with the request. (Id. No. 18). Accordingly, on January 12, 2004, the Court allowed Mr. Pettibone to withdraw as Defendant's counsel. (Id.).

Meanwhile, Defendant, fearing prosecution in a related criminal matter, fled the state and remained on the run until authorities [*4] arrested him in Texas on January 22, 2004, three days after his response to the Complaint became due. (Decl. of James P. Lewis at P 10; Decl. of Peter F. Del Greco at P 11). He has remained in prison since his arrest. (Id. at P 12). On February 10, 2004, Plaintiff filed a Request to Enter Default against Defendant,[2] which the Court entered on February 17, 2004. (Id., Exh. 3).

--------------- Footnotes ---------------

2
Defendant was personally served with a copy of the request to enter default on February 12, 2004. (Decl. of Peter F. Del Greco, Exh. 3).

------------ End Footnotes---------------

Subsequently, on April 12, 2004, Plaintiff filed a Motion for Entry of Judgment by Default, which the Court granted on May 12, 2004. (Defendant's Notice Of Lodgment, Exh. J). Although Defendant was served with a copy of both Plaintiff's Motion and the Court's subsequent order entering default judgment,[3]
he took no action in response to either. He explained that a fellow prison inmate had told him that he had no recourse to the entry of default because he had missed the deadline to respond [*5] to the Complaint.[4] (Decl. of James J. Warner at P 5).

--------------- Footnotes ---------------

3 See Plaintiff's Notice of Lodgment, Exh. 3; Defendant's Notice of Lodgment, Exh. J.

4
Defendant did not allege this explanation in his own declaration. Instead, James J. Warner, Defendant's second attorney, declared that he learned these facts from Defendant. (Decl. of James J. Warner at P 5).

------------ End Footnotes---------------

Shortly after the Court entered the default judgment, Defendant retained his current counsel, James J. Warner, who informed Defendant that the inmate had been mistaken. (Decl. of James J. Warner at PP 5-6). Approximately two months later, on or about July 15, 2004, pursuant to Local Rule 7-3, an attorney in Mr. Warner's office met and conferred with Plaintiff's counsel. (Id. at P 6). Defense counsel requested that Plaintiff's counsel agree to set aside the default judgment. (Id.). Plaintiff's counsel, however, declined to do so. (Id.). He also denied defense counsel's request to allow Defendant to file his Motion to Set Aside Default Judgment [*6] without waiting twenty days after the meet and confer, as required by Local Rule 7-3. (Id.).

Defendant ultimately filed this Motion to Set Aside Default Judgment on August 23, 2004. Thereafter, on August 30, 2004, Plaintiff filed an Opposition to Motion to Set Aside Default Judgment. On September 7, 2004, Defendant filed a Reply.

II. DISCUSSION

Defendant has moved for relief from the Court's order entering default and default judgment under Federal Rules of Civil Procedure 55(c) and 60(b)(1). Rule 55(c) provides that a court may set aside a default for "good cause shown." Fed. R. Civ. Pro. 55(c). Similarly, Rule 60(b)(1)
permits a court to "relieve a party . . . from a final judgment . . . for the following reasons: [] mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. Pro. 60(b)(1). A district court has discretion to determine whether to set aside defaults pursuant to Rule 55(c) and default judgments pursuant to Rule 60(b)(1). TCI Group Life Insurance Plan v. Knoebber, 244 F.3d 691, 695 (9th Cir. 2001); [*7] Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922, 927 n.4 (9th Cir. 2004) ("As with the district court's denial of HRG's motion to set aside a default, we review the district court's denial of HRG's motion to set aside a default judgment for an abuse of discretion.") (citing Alan Neumann Prods., Inc. v. Albright, 862 F.2d 1388, 1391 (9th Cir. 1989)). But in exercising that discretion, courts must be mindful that default judgments "are appropriate only in extreme circumstances" and, whenever possible, courts should resolve cases on the merits. TCI Group Life Insurance Plan, 224 F.3d at 696. "Put another way, where there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." Id. (emphasis in original).

"The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." Franchise Holding II, LLC, 375 F.3d at 925 [*8] (citing TCI Group Life Insurance Plan, 244 F.3d at 696). Both require courts to apply an equitable analysis to determine whether neglect is excusable or whether good cause has been shown. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993); Bateman v. United States Postal Service, 231 F.3d 1220, 1222 (9th Cir. 2000) (applying Supreme Court's standard from *Pioneer* to Rule 60(b)(1)
motion where judgment was entered after moving party missed deadline for filing opposition to summary judgment motion); TCI Group Life Insurance Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001) (observing that analysis of "good cause" for Rule 55(c) motion necessarily encompasses Pioneer's equitable analysis). The "good cause" analysis requires the Court to consider three factors: (1) whether the moving party's culpable conduct led to the default; (2) whether the moving party has a meritorious defense; or (3) whether re-opening the default judgment would prejudice the non-moving party. Franchise Holding II, LLC, 375 F.3d at 926. The Ninth Circuit has noted that these factors are disjunctive [*9] and, as such, a district court may deny a motion to set aside a default judgment "'if any of the three factors [are] true.'" Id. (citations omitted).

A. Culpability of Moving Party

A defendant's actions are "culpable" if he "'has received actual or constructive notice of the filing of [an] action and *intentionally* failed to answer.'" TCI Group Life Insurance Plan, 244 F.3d at 697
(citations omitted) (emphasis in original). However, "neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' . . . and therefore not necessarily . . . culpable or inexcusable." Id. at 697-98. Nevertheless, courts may consider a defendant's neglectful failure to answer in determining whether to set aside a default judgment. Id.
But a defendant's neglectful failure to answer, without more, is typically not "culpable" unless "there is no explanation of the default inconsistent with a devious, willful, or bad faith failure to respond." Id. at 698. [*10]

In evaluating a defendant's alleged culpability, courts must accept the defendant's uncontested factual allegations accompanying his motion to set aside default as true. Falk, 739 F.2d at 464 ("On a Rule 60(b) motion, this court will accept the allegations of the movant's factual statements."); see Laurino v. Syringa General Hospital, 279 F.3d 750, 753 (9th Cir. 2002) (finding that district court erred in denying Rule 60(b)
motion, in part, because court failed to credit moving party's "non-frivolous explanation" for failing to prosecute case) (citing Falk, 739 F.2d at 464)).

Here, Defendant's conduct, while careless and neglectful, was not culpable. First, Defendant has offered good faith explanations for his failure to respond to the Complaint. Specifically, he explained that, despite his efforts to do so, he was unable to obtain counsel to represent him in this matter. Although he concedes that Mr. Pettibone was representing him when the Complaint was filed and served,
5
Defendant notes that Mr. Pettibone declared himself unqualified to represent Defendant in this matter. Additionally, Mr. Pettibone obtained an order granting his motion [*11] to withdraw from further representing Defendant. While Mr. Pettibone's decision to withdraw as counsel stemmed, in part, from his inability to contact Defendant, Defendant's response to the Complaint was not yet due when Mr. Pettibone withdrew as counsel.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

5
Defendant argues that he was not obliged to respond to the Complaint because he was never notified by his attorney, Mr. Pettibone, that the Complaint had been served. Since the Court grants Defendant's Motion to Set Aside Default Judgment on other grounds, it need not reach this argument. Nevertheless, the Court notes that Mr. Pettibone was authorized to accept service of the Complaint. (Plaintiff's Notice of Lodgment, Exh. G). Moreover, although Mr. Pettibone later moved to withdraw as counsel, he accepted service long before the Court granted his request to withdraw as Defendant's counsel. (Id.).

Regardless, ample evidence shows that Defendant, at a minimum, had constructive notice of Plaintiff's Complaint. For example, Mr. Pettibone'sent Defendant advance notice of the December 31, 2004 deposition. (Decl. of Peter F. Del Greco, Exh. 2 at 19). And even assuming that Defendant never received this notice, he learned by January 7, 2004 at the latest that Plaintiff wanted to depose him. (Decl. of James P. Lewis at P 2 ("On or about this same period, January 7, 2004, Mr. Pettibone also informed me the SEC desired to take my deposition and wanted to serve me with notice."). But instead of responding to Plaintiff, Defendant fled the state. Moreover, when he was later arrested in Texas on January 22, 2004, he was found with a copy of a newspaper article describing this case. (Decl. of Peter F. Del Greco at P 15(C)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*12] The fact that Defendant's proffered explanations are weak by any measure does necessarily mean that his actions, or inaction, were culpable. See Bateman, 231 F.3d at 1225
(conceding that attorney's proffered explanations for failing to timely respond to summary judgment motion were "admittedly weak," but nevertheless noting that they evidenced only carelessness and negligence, not deviousness or willfulness); see also Laurino, 279 F.3d at 753 (finding that plaintiff's affidavit stating he was unable to obtain new attorney weighed in favor of granting plaintiff's Rule 60(b)
motion). Defendant probably could have timely obtained replacement counsel if he had put forth sufficient effort. Indeed, his failure to allege any facts showing the extent to which he tried to obtain replacement counsel likely indicates that he exerted little effort in this endeavor. See Laurino, 279 F.3d at 756 (in dissent) (criticizing plaintiff's counsel's affidavit for alleging conclusory facts about inability to find replacement counsel and opining that "had plaintiff been able to say anything more helpful to his cause, the lawyer would have put it in the [*13] affidavit"). Nevertheless, his failure to do so, while careless, does not establish his culpability.

Second, Defendant's actions since the Court first entered default do not suggest bad faith. Taking Defendant's allegations as true, as the Court must do, Defendant relied on the erroneous advice of a fellow inmate, who told Defendant that no recourse was available once Defendant missed the deadline to respond to the Complaint. Although blindly accepting this advice may have been unreasonable, it nevertheless is inconsistent with a devious, willful, or bad faith failure to respond. Moreover, after finally obtaining replacement counsel, Defendant has shown diligence in prosecuting his current Motion. Indeed, his attorney asked Plaintiff's counsel to waive the twenty day requirement under Local Rule 7-3
and allow Defendant to file this Motion in an expedited manner. And although Defendant ultimately waited more than twenty days to file this Motion, he nevertheless filed it within a reasonable time after the parties' Rule 7-3 meet and confer.

Third, no evidence suggests that Defendant refused to respond to the Complaint in order to either obtain an advantage over Plaintiff, interfere [*14] with judicial decisionmaking, or otherwise manipulate the legal process. Defendant may have attempted to evade police in a criminal matter by fleeing the state, but he has gained nothing in this civil matter from his failure to respond to the Complaint. Although Defendant's neglect has caused the Court and Plaintiff to waste their time and resources, Defendant's inaction has not interfered with the Court's decisionmaking process.

Finally, while Defendant's initial decision to flee the state might ordinarily establish the requisite culpability to deny a motion to set aside default judgment, such a finding would be inappropriate here. Defendant was still on the run when his response to the Complaint was due, but he was arrested only three days later. Thus, his decision to flee from authorities did not cause a substantial delay in the proceedings. 6
Even though his conduct may be blameworthy, the Court must balance his actions and their consequences against the Ninth Circuit's unequivocal preference for cases being decided on the merits. (See supra). Given this preference, the Court is unwilling to find that the short period of time that Defendant spent on the run from authorities [*15] establishes the requisite culpability to forego a decision on the merits.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

6 Following Pioneer, the Ninth Circuit, in Bateman, considered "length of delay and its potential impact on the proceedings" as one of four guiding factors in determining whether "excusable neglect" existed within the meaning of Rule 60(b)(1). Bateman, 231 F.3d at 1223-24 (stating that court considering Rule 60(b)(1)
motion to set aside judgment must consider "(1) the danger of prejudice to the opposing party; (2) *the length of delay and the potential impact on the proceedings*; (3) the reason for the delay; and (4) whether the movant acted in good faith") (emphasis added). Since Bateman, the Ninth Circuit clarified that courts need not explicitly consider Pioneer's four factors in evaluating motions to set aside default judgments. TCI Group Life Insurance Plan, 244 F.3d at 696. But in doing so, the Ninth Circuit reasoned that its existing three factor test for evaluating such motions sufficiently encompassed the four factors that Pioneer had later identified. Id. Thus, following the Ninth Circuit's reasoning, a district court's application of the three factor test to evaluate a motion to set aside default judgment necessarily considers the length of delay and its consequence on the proceedings. As such, the insubstantial length of delay in this case, coupled with its minimal impact on the proceedings, weighs in favor of setting aside the default judgment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*16] **B. Meritorious Defense**

In order to justify an order setting aside a default judgment, a defendant must "present the district court with specific facts that would constitute a defense." <u>Franchise Holding II, LLC</u>, 375 F.3d at 926 (citing <u>Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969))</u>. Although this burden cannot be met by offering conclusory statements or general denials without supporting facts (id.), it is not an extraordinarily high burden. <u>TCI Group Life Insurance Plan</u>, 244 F.3d at 700 (citing <u>In Re Stone, 588 F.2d 1316, 1319 n.2 (10th Cir. 1978))</u>. Rather, the defendant need only allege sufficient facts or law to show that a legitimate defense exists. *Id.* In this context, courts leave questions regarding the truth of any such factual allegations for a later stage in the litigation. *Id.* (citing <u>Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984))</u>.

In this case, Defendant has alleged sufficient facts to establish a potentially meritorious defense. For example, he alleges that all of his investors knew the risks involved in the investments that they made with Defendant; yet, each investor [*17] authorized his or her investment. (Decl. of James J. Warner at P 8). Defendant also notes that many of the investors made significant profits from what he describes as "legitimate investments." (Decl. of James J. Warner at P 8). Moreover, he claims that the government has substantially overstated the alleged losses from the "legitimate investments" at issue in this case. (Decl. of James J. Warner at P 8). In support of this allegation, he notes that the government has reduced its initial valuation of the alleged losses in this matter from $ 800 million to $ 65 million. The Court, of course, expresses no view on the strength or validity of this defense, but it nevertheless finds that these allegations satisfy Defendant's relatively low burden of articulating the possibility of a legitimate defense.

**C. Prejudice to Opposing Party**

An order setting aside a default judgment prejudices the non-moving party when the order would hinder that party's ability to pursue its claim. <u>Falk, 739 F.2d at 463</u>. No prejudice exists, however, where the order setting aside default judgment merely delays resolution of the case. <u>TCI Group Life Insurance Plan, 244 F.3d at 701.</u> [*18] Likewise, a non-moving party suffers no prejudice by being compelled to litigate its claims on the merits. <u>Bateman, 231 F.3d at 1225</u> (finding that non-moving party would endure no prejudice from order setting aside judgment because order would deprive non-moving party of only "a quick victory"); <u>TCI Group Life Insurance Plan, 244 F.3d at 701</u>
(setting aside default judgment because non-moving party would suffer no prejudice other than incurring typical costs associated with litigating her claim).

Here, no evidence suggests that Plaintiff would suffer any cognizable prejudice if the Court sets aside the default judgment. Indeed, in its Opposition to Defendant's Motion, Plaintiff never argues that Defendant's failure to timely respond to the Complaint has resulted in any prejudice. Although several months have passed since Defendant's response was due, Plaintiff has not alleged that any witnesses have disappeared, nor that any evidence has been lost or destroyed. On the contrary, all assets and monies at issue in this matter are being held pursuant to a prior order of this Court. (Decl. of James J. Warner at P 7). Moreover, along with his current Motion, [*19] Defendant has already attached a proposed answer to the Complaint. (Defendant's Notice of Lodgment, Exh. K). While he should have filed an answer, or other response, months ago, no evidence suggests that his failure to do so has in any way hindered Plaintiff's ability to pursue its claim. Consequently, this factor, like the two previous factors, weighs in favor of setting aside the default judgment.

**III. CONCLUSION**

The Court concludes that good cause exists to vacate the entry of default judgment. Accordingly, Defendant's Motion to Set Aside Default Judgment is hereby GRANTED.

DATED: *September 27, 2004*

**AUDREY B. COLLINS**

**UNITED STATES DISTRICT JUDGE**

Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.
Your use of this service is governed by Terms & Conditions . Please review them.