```
CURTIS R. TINGLEY (SBN112322)
ctingley@tingleyllp.com
BRUCE C. PIONTKOWSKI (SBN 152202)
bpiontkowski@tingleyllp.com
TINGLEY PIONTKOWSKI LLP
10 Almaden Boulevard, Suite 430
San Jose, California 95113
Telephone:   (408) 283-7000
Facsimile:   (408) 283-7010

Attorneys for Defendants
MASTER MARKETEERS, INC.,
and SUSAN PACINI
```

UNITED STATES DISCTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHANEL, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUSAN LYNNE PACINI aka SUSAN L. PACINI dba PLANET TAN dba MASTER MARKETEERS, INC., and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV-07-05946 CRB<br><br>**REPLY BRIEF IN RESPONSE TO PLAINTIFF'S OPPOSITION**<br><br>Date:        May 30, 2008<br>Time:       10:00 a.m.<br>Courtroom: 8, 19th Floor<br>Honorable Charles R. Breyer |

The following is Defendant Susan Pacini's ("PACINI") Reply to the Opposition to her Motion to Set Aside the Default.

**A.    "Good Cause" to Set Aside the Default Does Not Exist**

In response to the arguments of Chanel, the Court should be aware that there are two grounds for establishing good cause to set aside this default.

First, as described in the opening brief in detail, in the present case, though counsel for Chanel did apparently warned PACINI's attorney Randall Knox ("KNOX") that a notice of default was going to be filed, there is no evidence that Chanel served the notice of default either on KNOX or on PACINI.  (See Decl. Lisi.)

5CC4D992.docx

TINGLEY
PIONTKOWSKI LLP
ATTORNEYS AT LAW

REPLY BRIEF
CASE NO. CV-07-05946 CRB

1  This is further evidence that, though KNOX had been advised that a default might be entered, PACINI had no indication that the matter was not being taken care of by the attorney she had retained. (See Decl. PACINI.)

Courts often look to seek whether there was a conscious disregard by the party against whom the default was entered. (*See e.g.* Wright-Miller, <u>Federal Practice and Civil Procedure</u>, section 2693, page 106 citing cases including <u>999 Cox & Co</u>, 574 F.Supp. 1026 (Mo 1983).)

Here, PACINI took all reasonable steps to see that a response was filed. Plaintiff focuses upon the time period between January and March, and asks why did PACINI fail to monitor KNOX? But the answer to this question is simple: the suit had only recently been served on PACINI in December, she had delivered the Complaint to her attorney KNOX within a few days of service (there was the Christmas holiday in the middle), and KNOX had indicated that he was negotiating with Chanel. (Decl. PACINI.)

These are not the indications of someone who is attempting to avoid the litigation process.

Rather, PACINI was under the reasonable presumption that KNOX was taking care of the matter. She did try to contact him, but was unable to reach KNOX. No culpability can be attributed to PACINI because she did not delay whatsoever in delivering the Complaint to her counsel and she did try to monitor his efforts. (Decl. PACINI.)

Also, as noted in Wright-Miller, <u>Federal Practice</u>, section 2693, page 111, though simple neglect by counsel will be imputed to the client, where the client acted diligently, courts are reluctant to deprive the client of their day in court. The courts usually tip the balance toward the client where the attorney erred. (See Wright, <u>Federal Practice</u> page 112, note 51 citing among other cases, <u>Seven Elves Inc v Eskenazi</u>, 635 F.2d 396 (5th Cir. 1981); <u>New Field Int'l Sales v Salem</u>, 116 FRD 215 (Ill. 1986); and <u>US v Berger</u>, 86 FRD 713 (PA, 1980).

This case cries out for such relief. Here, the neglect by KNOX should not be imputed to PACINI. She had promptly sent him the Complaint when it was served. He was providing assurances that he was taking care of the matter. She had no notice that anything was wrong until he called her in April. Thereafter, she acted promptly and immediately hired present civil counsel. (Decl. PACINI.) Thus, she did nothing wrong and could not have been aware of the

circumstances because Chanel did not even serve her or her counsel with a notice of default. (Decl. Lisi.)

Mutual mistake has been found to be grounds to set aside a default. For instance, in <u>Weiss v St Paul Fire</u> 283 F.3d 790 (6th Cir. 2002), the court set aside a default where an insured believed that his insurer was responding. Similarly, defaults were set aside in the following cases where there was a mistake of fact: <u>Kingvision v Pay-Per-View</u>, 150 F.Supp.2d 188 (ME 2001); <u>Simmons v Ohio Civil Ser. Empl. Ass'n</u> 210 FRD 207 (Ohio, 2002); <u>Fonseca v Columbia Gas Sys.</u>, 37 F.Supp.2d 214 (NY 1998); and <u>Ricotta v California</u>, 4 F.Supp. 25 961 (CA 1998).

In this case, if one were to believe KNOX, then there was a mutual mistake of fact. He claims that he believed that PACINI would hire civil counsel and she believed that he was handling the matter. (Decl. of KNOX.) There was apparently a miscommunication.

There is no evidence of "gross neglect" **by PACINI**. As repeated herein, she was served on December 23rd and sent the Complaint to her attorney by fax on December 26th. (Decl. PACINI.) This cannot be considered gross neglect.

Where there is no culpability on the client, the courts have repeatedly set aside defaults. (See Wright-Miller, <u>Federal Practice</u>, section 2696, note 7 and Supplement note 7.)

Though several of the decisions cited in the opening brief did involve cases were the defaults were not set aside, those cases were cited to establish the nature of the standards applied by the courts. The reliance upon <u>SEC v. Lewis</u>, 2004 Dist. Lexis 29597, was due to the fact that it was a case where there was an apparent mutual mistake of fact where the court found that the grounds were sufficient to set aside the default. It is the position of attorney KNOX that because he told PACINI that he was a criminal defense attorney that she understood that she was to obtain civil counsel to represent her. (Decl. KNOX.) To the extent that a party to litigation reasonably relies upon another person to take action on their behalf, this has been found to be grounds to set aside a default. This issue was addressed in detail in the initial brief.

On this basis alone, the default should be set aside.

Second, in the alternative, the court may set aside this default if it finds that KNOX was "grossly negligent."

1  Notwithstanding the remarks of Chanel in its brief, there is evidence that attorney KNOX did act with **gross negligence**. There is no doubt that this default was the result of the actions and inactions of KNOX rather than PACINI.

The extreme inaction of KNOX, when he was given repeated warnings by Chanel's counsel about an impending filing of a default, arguably amounts to gross negligence. (See Decl. of Lisi.)

This is not a case in which an attorney or his staff made a clerical error, and failed to file a timely Answer. Rather, in this case, KNOX received a copy of the Complaint within two to three days of it being served on PACINI. (Decl. PACINI.) But he did nothing. He did not refer her to a civil attorney and he did not file an Answer. Rather, he indicated to her that he would take care of the issue and contact Chanel's counsel. (Decl. KNOX and Decl. PACINI.) Thereafter, when he was warned at least once, and perhaps twice, that a default was going to be filed, KNOX still did nothing. He did not refer the matter to a civil attorney, he did not contact PACINI and he did not file an Answer. Rather, there evidence is clear that, when he finally told PACINI about the default in April 2008, she promptly hired present civil counsel to set aside the default. (Decl. PACINI and KNOX.)

In the case Community Dental Services v. Tani, 282 F 3d 1164, 1169 (9th Cir. 2002), the Court decided that a default could be set aside where an attorney was **grossly negligent**.

The facts in Community Dental are as follows. In that case, in response to the filing of the action on May 13, 1999, Defendant Tani consulted with his financial advisor, Jeff Stein (an attorney who subsequently resigned from the California State Bar with charges pending). Stein recommended that Tani retain attorney Eugene Salmonsen, as counsel, and Tani did as advised. Stein continued to work with Salmonsen in representing Tani in the early stages of the case.

In the Community Dental case, both parties orally agreed to an extension of time for the filing of an answer to the complaint. Community Dental Services ("CDS") forwarded a signed stipulation providing for a 10-day extension. However, Tani's counsel failed to file the stipulation, and also failed to file a timely answer. On July 14, 1999, CDS filed a request for entry of default. At the time of its request, CDS discovered that an answer had been filed one day

earlier, on July 13. The answer was filed approximately two weeks late. Having not been served with a copy, CDS telephoned Stein who stated that CDS had indeed been served with a copy, but that he would send an additional copy as a courtesy. CDS again did not receive a copy of the answer. At a preliminary case management conference on July 21, 1999, Stein and Salmonsen appeared on behalf of Tani. Stein again represented to CDS that he had sent the answer to CDS's counsel through overnight mail. CDS declared that it had never received the pleading. On August 9, 1999, the magistrate judge ordered Salmonsen to serve the answer on CDS and to call CDS to discuss further the possibility of settlement. Salmonsen did not obey this court order. He failed to contact CDS for the court-ordered settlement conference call, and failed once again to give CDS a copy of Tani's answer. Subsequently, CDS made a motion to strike the answer and moved for a preliminary injunction and default judgment against Tani. At the hearing on these motions on October 18, 1999, Salmonsen appeared on Tani's behalf, but he did not file a written memorandum in opposition, and *still* did not provide CDS with a copy of the answer. After hearing oral arguments from both parties, the District Court granted CDS's motions.

In that case, on several occasions, Salmonsen and Stein represented to Tani that the litigation was proceeding smoothly. Tani continued to rely on both Salmonsen's and Stein's assurances that the case was going well. Tani asserts that, it was not until he received the order for default judgment at his office in approximately April 2000, he became aware of the events that had been occurring with respect to his case.

The Court of Appeal reversed the district court's decision to deny the motion to set aside the default. It stated:

> The district court concluded that Tani did not present "extraordinary circumstances" beyond his control because he was chargeable with his counsel's conduct. Under this circuit's precedent, a client is ordinarily chargeable with his counsel's negligent acts. Clients are "considered to have notice of all facts known to their lawyer-agent." Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141-42 (9th Cir. 1989) Because the client is presumed to have voluntarily chosen the lawyer as his representative and agent, he ordinarily cannot later avoid accountability for negligent acts or omissions of his counsel. Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962) . . . . While the above principles provide the general rule regarding the client-attorney relationship, several circuits have distinguished a client's

accountability for his counsel's neglectful or negligent acts - too often a normal part of representation - and his responsibility for the more unusual circumstance of his attorney's **extreme negligence or egregious conduct**. This circuit, however, has not yet addressed the question whether a client is responsible for his counsel's gross negligence, or, to put the question differently, whether gross negligence may constitute "extraordinary circumstances" warranting relief under Rule 60(b)(6). (Id. at p. 1168.)

The Court further explained:

> The circuits that have distinguished negligence from gross negligence in the present context have granted relief to the client where the default judgment was a result of his counsel's displaying "neglect so gross that it is inexcusable." <u>Boughner v. Sec'y of Health, Educ. & Welfare,</u> 572 F.2d 976, 978 (3d Cir. 1978); see also <u>Carter v. Albert Einstein Med. Ctr.</u>, 804 F.2d 805, 806 (3d Cir. 1986) (reversing denial of plaintiff's R. 60(b) motion based on plaintiff's counsel's "blatant disregard for explicit [court] orders"); <u>Shepard Claims Serv., Inc. v. William Darrah & Assocs.</u>, 796 F.2d 190, 195 (6th Cir. 1986) ("Although a party who chooses an attorney takes the risk of suffering from the attorney's incompetence, we do not believe that this record exhibits circumstances in which a client should suffer the ultimate sanction of losing his case without any consideration of the merits because of his attorney's neglect and inattention."); <u>L.P. Steuart, Inc. v. Matthews,</u> 117 U.S. App. D.C. 279, 329 F.2d 234, 235 (D.C. Cir. 1964) (stating that R. 60(b)(6) "is broad enough to permit relief when as in this case personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client"); <u>Primbs v. United States,</u> 4 Cl. Ct. 366, 370 (1984) (holding that normal attorney-client relationship does not bar Rule 60(b) relief when "the evidence is clear that the attorney and his client were not acting as one"). These courts have concluded that an unknowing client should not be held liable on the basis of a default judgment resulting from an attorney's grossly negligent conduct, and that in such cases sanctions should be imposed on the lawyer, rather than on the faultless client. See <u>Carter</u>, 804 F.2d at 807; <u>Steuart</u>, 329 F.2d at 235. (Id. at p. 1169.)

The Court further held that:

> **We join the Third, Sixth, and Federal Circuits in holding that where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6).** (Emphasis added.) (Id at p. 1170.)

The Court then applied this rule to the facts before it:

> Having held that an attorney's gross negligence may constitute "extraordinary circumstances" under Rule 60(b)(6), we now proceed to apply this rule to the case at hand. **Upon review of the record, it is clear that in this case "extraordinary circumstances" justify the granting of relief from the default**

> **judgment**. Salmonsen virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so. Salmonsen's inexcusable and inexplicable acts commenced with his conduct surrounding the ill-fated answer to CDS's complaint. After failing to sign a stipulation (already signed by CDS) for an extension of time to file an answer, Salmonsen filed an answer two weeks late. However, he then failed to serve a copy of the answer on CDS, despite repeated requests from CDS and a direct order from the district court. In the end, Salmonsen *never* provided CDS with a copy.
>
> * * * *
>
> **Rather, conduct on the part of a client's alleged representative that results in the client's receiving practically no representation at all clearly constitutes gross negligence, and vitiating the agency relationship that underlies our general policy of attributing to the client the acts of his attorney**.
>
> Moreover, Salmonsen explicitly represented to Tani that the case was proceeding properly. (Emphasis added.) (Id. at pp. 1170-1171.)

In the current case, like the attorneys for defendant Tani in the Community Dental Service case, KNOX completely abandoned PACINI. He ignored his duties because he was "too busy," and failed to heed the warnings by Chanel's legal counsel about an impending default. (Decl. KNOX.) KNOX did not send PACINI a letter, a fax or an email warning her that she had to hire another attorney. (Decl. PACINI.) Rather, KNOX had led PACINI to believe that he would take care of the matter. (Decl. PACINI.) Furthermore, KNOX did not contact PACINI until April to inform her about the default. (Decl. KNOX and Decl. PACINI.)

The amount of harm done to PACINI is unknown. The exact amount of damages sought by Chanel is unknown at present. Unlike the Community Dental case, there was been no damages hearing or entry of judgment. However, the size of the judgment sought is expected to be substantial and to be of a magnitude that could easily bankrupt PACINI. As a result, this conduct of KNOX should not be excused because PACINI and her company's business will not likely survive to seek malpractice damages against KNOX.

In sum, these grounds alone are sufficient "good cause" since there was gross negligence on the part of KNOX.

Thus, whether due to gross negligence on the part of KNOX, or mutual mistake between

1  KNOX and PACINI, there is good cause to set aside this default.

2  As such, PACINI's motion should be granted.

**B.   No Prejudice to Chanel**

No prejudice is established by Plaintiff Chanel. Merely having to litigate this matter does not create sufficient grounds to establish prejudice. (*See* TCI Group v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001.)

Chanel claims that it cannot protect its marks *if this default is set aside*. It claims that it has been deprived of discovery by the default. But this makes no sense since it could engage in discovery *if the default is set aside*.

Furthermore, Chanel may seek remedial measures such as an injunction if it has evidence that purportedly supports its position.

Thus, set aside this default will have little impact on this multinational company's ability to protect itself against a small tanning salon business in the East Bay.

As such, this argument by Chanel fails and the relief from the default should be granted.

**C.   There Is A Meritorious Defense**

There may be numerous defenses applicable in this case; however, without the opportunity to pursue discovery, it is difficult to assert them with admissible evidence at this very early stage.

PACINI, nevertheless, has come forward with evidence that the "first sale" doctrine is at least one applicable defense.

In its opposition brief, Chanel claims that PACINI has provided insufficient evidence to demonstrate that there exists a meritorious defense. Notwithstanding the fact that the standard of proof of asserting a meritorious defense is very low, PACINI concurrently herewith, is filing a supplemental declaration.

That supplemental declaration describes in greater detail where she purchased the subject merchandise on behalf of her company, Master Marketeers Inc. PACINI purchased the merchandise in question at the wholesale market held every Tuesday in Galt, California. For many years, PACINI's company has purchased new merchandise at this wholesale market. She

had no reason to believe that the Chanel goods were not authentic. In fact, she did believe that they were authentic and that is why she purchased them at this wholesale market. (See Supplemental Decl. of PACINI.)

Based upon her original declaration and this supplemental declaration, there is more than enough evidence to establish that, if successful, these facts would constitute a defense to this action. Chanel has not produced any evidence that any of the merchandise was not authentic. As a result, PACINI's Motion to Set Aside the Default should be granted, and she should be allowed to appear.

## CONCLUSION

Defendant PACINI respectfully requests that the default is set aside and that she is allowed the opportunity to defend this case.[1]

Dated:   May 15, 2008          TINGLEY PIONTKOWSKI LLP


                                By: /s/ Bruce C. Piontkowksi
                                    BRUCE C. PIONTKOWSKI
                                    Attorneys for Defendant

---

[1]   Master Marketeers Inc. is a duly formed corporation doing business in California and was named as a party in the Chanel complaint. As such, an Answer has been filed on behalf of this corporation.